**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHRIS POINDEXTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-0031-F |
| | ) | |
| JACK STUTEVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Five motions are before the court.  They are:  the motion to dismiss of Richard Reynolds, identified in the complaint as the city manager of Kingfisher, Oklahoma (doc. no. 24);  the motion to dismiss of Jack Stuteville, identified in the complaint as the mayor of Kingfisher (doc. no. 32);  the motion for partial dismissal filed by the City of Kingfisher (doc. no. 26);  the motion to dismiss of Michael Mecklenburg and TMC Construction Company, Inc. (TMC) (doc. no. 29);  and  plaintiffs' motion to dismiss without prejudice claims alleged against defendants TMC and Michael Mecklenburg.  (Doc. no. 40).

I. Motions Involving TMC and Mr. Mecklenburg

(Doc. Nos. 29 and 40)

Plaintiffs have filed a notice of dismissal without prejudice of claims previously alleged against Mr. Mecklenburg and TMC.  (Doc. no. 47.)  The notice was filed under Rule 41(a)(1)(A)(i), Fed. R. Civ. P.  The notice effected dismissal of these defendants when it was filed on April 23, 2012.

As Mr. Mecklenburg and TMC are no longer defendants in this action, their motion to dismiss is **STRICKEN** as moot.  (Doc. no. 29.)

Prior to filing the notice dismissing Mr. Mecklenburg and TMC under Rule 41(a)(1) described above, plaintiffs moved for dismissal of these two defendants under Rule 41(a)(2), Fed. R. Civ. P.  As plaintiffs have now dismissed these defendants without the involvement of the court under Rule 41(a)(1), plaintiffs' motion to dismiss Mr. Mecklenburg and TMC under Rule 41(a)(2) is **STRICKEN** as moot.  (Doc. no. 40.)

## II.  Factual Allegations

The motions which remain for determination are the three motions to dismiss filed by each of the city defendants. (As used in this order, the term "the city defendants" denotes City Manager Reynolds, Mayor Stuteville and the City of Kingfisher.)  Some of the factual allegations material to the claims alleged against the city defendants are summarized below.  In determining the motions, the court has considered all of the allegations, whether or not described here.

Plaintiffs are Pridex Construction, L.L.C. (Pridex) and Chris Poindexter, the managing member and owner of Pridex.  (¶¶ 10-11.)[1]

The original defendants are Jack Stuteville, mayor (¶12);  Richard Reynolds, city manager (¶ 15);  the City of Kingfisher;  The Underwriters Group, Inc. (The Underwriters Group), a Florida corporation with its principal place of business in Florida (¶ 17);  Larry G. Wright, the president and/or CEO of The Underwriters Group (¶ 19);  Michael Mecklenburg, owner and president of TMC (¶ 14);  and TMC, a

---

[1]All paragraph numbers refer to the Amended Complaint (doc. no. 5).  When this order refers to the complaint, it refers to the Amended Complaint.

construction company with its principal place of business in Kingfisher, Oklahoma, which was ultimately awarded the work in question.  (¶¶13, 48.)

Per the complaint, on March 8, 2011, Pridex submitted a bid to the City of Kingfisher seeking the contract for the West Bottom Storm Water Project (the storm water project).  (¶ 30.)  Pridex was the low bidder.  (¶ 31.)  TMC was the third lowest bidder.  (¶ 33.)  On March 9, 2011, a bid analysis and recommendation of award was issued, recommending the contract be awarded to Pridex.  (¶ 34.)

This action arises out of a dispute which arose subsequent to the above-described events.  It involves the manner in which Pridex was allegedly prohibited from performing work for the storm water project despite its low bid.  The complaint alleges that plaintiffs were the victims of an illegal scheme intended to prevent Pridex from complying with requirements regarding bid documents.  (¶¶ 4, 39, 52.)  The complaint alleges that Mr. Stuteville steered and directed plaintiffs to The Underwriters Group.  (¶ 39.)  The complaint alleges that Mr. Stuteville's purpose in steering plaintiffs to The Underwriters Group was to financially cripple the plaintiffs and delay Pridex's presentation of a performance and maintenance bond for the storm water project.  (¶39.)

The complaint alleges that defendant Larry G. Wright, president and/or CEO of The Underwriters Group, spoke by telephone with Mr. Stuteville.  (¶ 40.)  The complaint alleges that Mr. Wright then advised Mr. Poindexter, managing member and owner of Pridex, that The Underwriters Group would issue the performance and maintenance bond for the project, and that Mr. Poindexter needed to send by overnight mail $19,059 for the bond premium and $50,000 for a security deposit.  (¶40.)  The complaint alleges that Mr. Poindexter did so on April 6, 2011.  (¶ 40.)  The compliant alleges that on April 7, 2011, plaintiffs were advised by City Manager Reynolds to

begin work on the project because of good weather and the short time before wheat harvest, which they did.  (¶ 41.)  The complaint alleges that later, at an emergency meeting of the City Council, Mr. Reynolds denied that he advised plaintiffs to begin work.  (¶ 44.)  The complaint alleges that, at the emergency meeting, the City Council advised Pridex that it had ten days to provide an acceptable bond.  (¶ 44.)

The complaint alleges that, ten days after the emergency city council meeting, the bond was delivered by Mr. Wright and The Underwriters Group to Lone Wolf, Oklahoma, located three hours from Kingfisher. (¶45.) The complaint alleges that on the date of the deadline, Mr. Poindexter was able to deliver the bond to city hall just before city hall closed.  (¶ 46.)  The complaint alleges that after delivery of the bond, Mr. Reynolds informed Mr. Poindexter that the bond "was not going to work." (¶ 47.)

The complaint alleges that, acting upon the advice of Mr. Stuteville, Mr. Reynolds and the city attorney, the City Council terminated the notice of award to Pridex and subsequently awarded the bid to TMC.  (¶48.) The complaint alleges that The Underwriters Group and Mr. Wright have failed and refused to return the funds submitted to them by the plaintiffs. (¶ 50.)  The complaint alleges that the City of Kingfisher has refused to unconditionally return the bid bond submitted by Pridex. (¶ 51.)

The complaint alleges that the Oklahoma Insurance Department has prohibited Mr. Wright from engaging in insurance activities in the State of Oklahoma and has never authorized or licensed The Underwriters Group to engage in insurance activities in the State of Oklahoma.  (¶ 54.)  Thus, it is clear from the allegations that the bond which was provided by The Underwriters Group and rejected by the city defendants was not a proper bond.

-4-

### III.  Nature of the Claims.

As the only basis for federal jurisdiction, the complaint includes a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § § 1961 *et seq*.  The RICO claim is alleged in count one of the complaint.  The RICO claim is alleged against all defendants other than the City of Kingfisher.  The complaint alleges that defendants' illegal scheme caused plaintiffs' bid and proposals to be delayed or disapproved, and that the scheme wrongfully directed appropriations, funding, and projects to TMC.  (¶ 4.)  The complaint alleges that defendants were co-conspirators in the illegal scheme.  (¶ 52.)

The complaint alleges various state law claims in counts two through eight. The state law claims are:  tortious interference with contract, intentional interference with prospective economic advantage, fraud, breach of contract, and unjust enrichment.

### IV.  Motions by the City Defendants
(Doc. Nos. 24, 32, 26)

The motions of the city defendants are brought under Rule 12(b)(6), Fed. R. Civ. P.  The motions of Mr. Stuteville and Mr. Reynolds challenge the sufficiency of the RICO claim. The City of Kingfisher is not named in the RICO count, therefore its 12(b)(6) motion does not challenge the RICO claim.  The city defendants' motions also seek dismissal of the state law claims.  In the event that the court dismisses the RICO claim under Rule 12(b)(6) and decides not to dismiss the state law claims under Rule 12(b)(6), the city defendants ask the court to decline supplemental jurisdiction over the state law claims and to dismiss this action on that basis.

### A.  Rule 12(b)(6) Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id.*  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient;  the complaint must give the court reason to believe that the plaintiff has a reasonable likelihood of mustering factual support for these claims.  <u>Ridge at Red Hawk</u>, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id.* Pleadings that are no more than legal conclusions are not entitled to the assumption of truth;  while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.*

The parties debate the manner in which the <u>Twombly/Iqbal</u> standard did or did not change pleading requirements.  Accordingly, the court notes the Tenth Circuit's recent elaboration of the pleading standard in <u>Khalik v. United Air Lines</u>, 671 F.3d 1188 (10th Cir.  2012).

> We recently stated this new standard is a "refined standard." <u>Kansas Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1214 (10th Cir. 2011). In applying this new, refined standard, we have held that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line

> from conceivable to plausible.' " Robbins v. Oklahoma, 519 F.3d 1242,
> 1247 (10th Cir.2008) (quoting Twombly, 550 U.S. at 570, 127 S.Ct.
> 1955). Further, we have noted that "[t]he nature and specificity of the
> allegations required to state a plausible claim will vary based on
> context." Kansas Penn, 656 F.3d at 1215; see also Iqbal, 129 S.Ct. at
> 1950 ("Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."). Thus, we have
> concluded the Twombly/Iqbal standard is "a middle ground between
> heightened fact pleading, which is expressly rejected, and allowing
> complaints that are no more than labels and conclusions or a formulaic
> recitation of the elements of a cause of action, which the Court stated
> will not do." Robbins, 519 F.3d at 1247 (internal quotation marks and
> citations omitted).

Id. at 1191.

Of course, the above standards are general standards.  When pleading special matters, heightened pleading standards apply; fraud, for example, must be alleged with particularity. Rule 9, Fed. R. Civ. P.  As discussed again later in this order, when a RICO claim is alleged, the complaint must frame pleadings in such a way as to give the defendant and the trial court clear notice of the factual basis of the predicate acts. Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989).  This is particularly important where the predicate fraud allegations provide the only link to federal jurisdiction.  Id.  The particularity requirements of Rule 9(b), Fed. R. Civ. P., apply in pleading RICO mail fraud and wire fraud.  Id.

Lastly with regard to standards, the court notes that some of the briefing papers rely on matters outside the pleadings.  The court has ignored these matters for purposes of determining the sufficiency of the pleadings.

## B.  The RICO Claim

Title 18 U.S.C. § 1962 of RICO is entitled "Prohibited Activities."  Section 1962 lists categories of prohibited activities in subsections (a) through (d).  The instant complaint does not allege which one (or ones) of these categories is the basis of plaintiffs' RICO claim.  This failure prohibits defendants from determining with any certainty the nature of the RICO claim they must defend against.  *See*, <u>Anvan Realty & Management Company v. Marks</u>, 680 F.Supp. 1245, 1247 (N.D. Ill 1988) (RICO claim dismissed as it failed to specify which subsection of § 1962 defendants allegedly violated;  defendants could not determine the nature of the allegations against which they must defend).  Defendants cannot be left guessing about the nature of the RICO claim.  For this reason, plaintiffs' RICO claim is deficient under Rule 12(b)(6).

The court presumes that if it were to dismiss the RICO claim solely for failure to allege which subsection of § 1962 applies, plaintiffs would then seek leave to add allegations specifying that their RICO claim is based upon subsection § 1962(c), the only subsection of § 1962 which plaintiffs' response brief invokes.[2]  Moreover, the parties have fully briefed the question of whether the allegations state a claim under §1962(c).  To conserve party resources and judicial resources, this order goes on to determine whether the complaint states a claim under § 1962(c).

## C.  Section 1962(c).

Subsection (c) of § 1962 provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

---

[2]Even if plaintiffs had not focused exclusively on subsection (c), the court notes that subsections (a) and (b) do not apply under the allegations and that subsection (d) (conspiring to violate any of the other provisions) requires a claim to be stated under subsection (a), (b) or (c).

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To survive a motion to dismiss, a plaintiff alleging a RICO violation under subsection (c) must allege that the defendant (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006).

D. Elements (1) and (2):
Participation in the Conduct of an Enterprise

The court first addresses the "enterprise" requirement, then the "participation in the conduct of" an enterprise requirement.

An "enterprise" is defined at 18 U.S.C. § 1961(4) as follows.

"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

To qualify as an enterprise there need not be allegations of a hierarchical structure or a chain of command; the group's decisions may be made on an *ad hoc* basis and by any number of methods including by majority vote, consensus, or a show of strength.  United States v. Hutchinson, 573 F.3d 1011, 1021 (10th Cir. 2009), citations to Supreme Court authorities omitted.  Members of the group need not have fixed roles; different members may perform different roles at different times. *Id*. The group need not have a name, regular meetings, dues, or established rules and regulations. *Id*.

The only type of enterprise arguably alleged or available in this action is an association-in-fact.  While the structural requirements for an association-in-fact are modest, to qualify as an association-in-fact enterprise, a group must have 1) a purpose,

2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Id*. With respect to the "purpose" requirement, the group must share the common purpose of engaging in a course of conduct. *Id*. With respect to the "relationship" requirement, not only must members of the group share a common purpose, there also must be evidence of interpersonal relationships aimed at effecting that purpose, that is, evidence that the members of the group have joined together to advance a certain object or engage in a course of conduct. *Id*. at 1021-22. As to the "longevity" requirement, the group must associate on the basis of its shared purpose for a sufficient duration to permit an association to participate in the affairs of the enterprise through a pattern of racketeering activity. *Id.*

The complaint alleges that one defendant (Mr. Reynolds) is the city manager, that one defendant (Mr. Stuteville) is the mayor and steered plaintiffs to The Underwriters Group, and that two defendants (Mr. Wright and The Underwriters Group) provided a bond which was not accepted and which, it turned out, was not, in fact, acceptable because The Underwriters Group was not licensed. The complaint does not plausibly allege that the actions taken by these defendants were actions of the members of a group which had as its purpose delaying or causing to be disapproved Pridex's bid proposal (¶4), or financially crippling Mr. Poindexter and Pridex (¶ 39) – the alleged purposes of the scheme. For example, although not determinative, the court notes the absence of any allegations (other than purely conclusory ones) explaining how any RICO defendant benefitted, or thought it would benefit, from a scheme intended to delay Pridex's presentation of the bond or hurt Pridex or Mr.

-10-

Poindexter.[3]  The "purpose" and the "relationship" criteria of a RICO association-in-fact type enterprise are not satisfied.

As for the requirement that the defendants "participate in the conduct of" a RICO enterprise, the court ignores allegations relating to "the defendants" as an undifferentiated set because such allegations fail to give adequate notice of who did what to whom.  Considering only specific acts taken by identified RICO defendants, the RICO claim does not allege participation in the conduct of an enterprise by any RICO defendant.  For example, one of the factors which it is appropriate to consider in evaluating a motion to dismiss is whether the allegations encompass a wide swath of conduct, much of it innocent.  Mr. Reynolds is alleged to have informed Mr. Poindexter that the bond would not work when the bond was presented at the last possible moment.  (¶ 47.)  The complaint, however, also alleges that the bond was not proper as it was issued by an entity not licensed to provide a bond in Oklahoma. (¶54.)  In these circumstances, advising Mr. Poindexter that the bond would not work is legal conduct.  The complaint further alleges that the City Council acted on the advice of Mr. Stuteville and Mr. Reynolds as well as the city attorney, and that the City Council terminated the notice of award to Pridex.  (¶ 48.)  When a proper bond has not been provided, advising the City to terminate a notice of award is a legal act.

Upon review of the allegations as a whole, the court concludes that the complaint does not plausibly allege that any RICO defendant participated in the conduct of a RICO enterprise.

---

[3]Although Mr. Mecklenburg and TMC presumably benefitted from the fact that Pridex did not perform the work, they are no longer defendants.

<u>E.  Element (3):  A Pattern (of Racketeering Activity)</u>

The court next addresses "the pattern" element.  A pattern of racketeering must include the commission of at least two predicate acts.  18 U.S.C. § 1961(5) ("pattern of racketeering activity" defined as requiring at least two acts of racketeering activity); <u>Resolution Trust Corp. v. Stone</u>, 998 F.2d 1534, 1543 (10th Cir. 1993).   However, because RICO is not aimed at the isolated offender, proof of two or more predicate acts, standing alone, is not sufficient to prove "a pattern" unless there is a relationship between the predicate acts and a threat of continuing activity.  <u>Tal v. Hogan</u>, 453 F.3d at 1267-68, quoting <u>Resolution Trust.</u>  Continuity of threat requires both proof of a series of related predicates extending over a substantial period of time, as well as a showing that the predicates themselves involve a distinct threat of long-term racketeering activity or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.  *Id.*

In this action plaintiffs complain about a single result – the fact that Pridex ultimately did not receive the benefit of its low bid because the bond which was provided by The Underwriters Group was rejected by the City.  Per the complaint, this single result was due to events occurring over a period of several weeks in the spring of 2011.[4]

---

[4]The complaint alleges that plaintiffs sent money to The Underwriters Group on April 6, 2011;  that plaintiffs were told on April 7 to commence work on the project;  that Mr. Poindexter was called to a meting with the City Council;  that there was a subsequent emergency meeting of the City Council at which time the council advised Pridex it had ten days to provide an acceptable bond;  that Pridex provided the bond on the tenth day;  and that Mr. Poindexter was then told the bond was not going to work.  (¶¶ 40-47).  Thus, it is fair to infer that the alleged events took place over a period of several weeks as opposed to months or years.  (Mr. Reynold's reply brief, doc. no. 41, p. 6, states that the City terminated the notice of award to Pridex in April of 2012, but that fact is not alleged and the court does not rely on it.)

Addressing the pattern requirement, <u>Resolution Trust Corporation v. Stone</u> states, quoting the Supreme Court, that there must be a relationship between the predicates and the threat of continuing activity.  *Id*. at 1543.  Continuity for these purposes is both a closed- and an open-ended concept.  *Id*.  A party may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  *Id*.  Predicate acts extending over a few weeks or months are insufficient to show closed-ended continuity.  *Id*.  Open-ended continuity depends upon the facts of each case, and may be established by showing that the predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.  *Id*.

Two factors are particularly relevant to the determination of continuity.  *Id*. Because continuity is essentially a temporal concept, the court considers the duration of the related predicate acts.  *Id*.  Second, the court considers the extensiveness of the RICO enterprise's scheme.  *Id*.  Multiple on-going activities are more likely to satisfy the continuity requirement than would be several sporadic, albeit still related, acts. *Id*.  Under the rubric of extensiveness, the court considers a number of factors: the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries caused were distinct, and the nature or character of the enterprise or unlawful activity.  *Id*. at 1543-44.  In doing so, the court may consider external facts that are not necessarily charged as predicate acts.  *Id*. at 1544.

Here, all of the alleged predicate acts of mail fraud and wire fraud occurred over a period of several weeks.  The alleged acts are therefore of insufficient duration to show closed-ended continuity.  *See*, *id*. at 1543 (predicate acts extending over a few weeks or months do not show closed-ended continuity).

As for open-ended continuity, plaintiffs allege that Michael Matthews is a contractor and a resident of Kingfisher who asserts that he has been subjected to the same, or a substantially similar, illegal scheme. (¶ 22.) The complaint also includes a citizen petition addressed to the City of Kingfisher, signed by ten citizens. (Doc. no. 5, ex. 1.) The citizen petition asks the city to diligently prosecute proper proceedings for the recovery of money or property belonging to the city and paid out pursuant to an unlawful contract. The citizen petition refers to the unlawful contracts in question as the construction contracts between Kingfisher and TMC dated in July and August of 2011. The citizen petition states that these contracts violate Oklahoma law because of a conflict of interest or nepotism. Neither the vague allegations regarding Mr. Matthews's assertions, nor the citizen petition, turn the alleged efforts by the RICO defendants to deny Pridex the benefit of its bid on one storm water project into a threat of continuing racketeering activity.

In <u>Hall v. Witteman</u>, 584 F.3d 859 (10th Cir. 2009), the RICO claim was properly dismissed by the district court which correctly concluded that, at best, what plaintiff alleged was a closed-ended series of predicate acts constituting a single scheme to accomplish a discrete goal directed at only one individual with no potential to extend to other persons or entities. *Id*. at 867-68. The Tenth Circuit held that the complaint did not adequately allege a "pattern" of racketeering activity, because it failed to allege sufficient continuity to sustain a RICO claim. *Id.* at 867. Similarly here, the complaint alleges that defendants were out to deny plaintiffs the benefit of Pridex's low bid on one storm water project, and that conduct to accomplish this goal took place over several weeks. At best, what is alleged is a single effort to accomplish a discrete goal directed against Mr. Poindexter and Pridex.

Based upon all of the factors relevant to a determination of continuity, the court finds no alleged continuing threat of racketeering activity.  Accordingly, the complaint fails to allege a "pattern" of racketeering activity.

### F.  Element (4): (A Pattern of) Racketeering Activity.

Finally, RICO requires that the alleged pattern of activity be a pattern, specifically, of "racketeering activity."

The complaint alleges that defendants executed their scheme "by causing matters to be mailed and delivered by the United States Postal Service, and by causing sounds and electronic data to be transmitted by means of wire communications in interstate commerce."  (¶ 5.)  The complaint further alleges that "Defendants committed multiple acts of mail fraud, indictable under 18 U.S.C. §1341, which constituted 'racketeering activity' within the meaning of 18 U.S.C. § 1961(1), and all of which collectively constituted part of a 'pattern of racketeering activity' within the meaning of 18 U.S.C. § 1961(5)."  (¶ 5.)  Thus, the predicate acts alleged in the complaint are mail fraud and wire fraud.[5]  *See*, 18 U.S.C. §1961(1) (defining "racketeering activity," and including mail fraud and wire fraud within the definition).

Identifying the predicate acts is just the beginning, however.  A RICO claim must allege the predicate acts with particularity.  *See*, Cayman Exploration Corp., 873 F.2d at 1362 (threat of triple damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame pleadings in such a way that will give the defendant, and the court, clear notice of the factual basis of the predicate acts;  Rule 9(b) particularity requirements apply in pleading RICO mail fraud and wire fraud).

---

[5]Later in the complaint, bid-rigging is also mentioned, without elaboration, as a possible predicate act.  (¶ 57.)  The allegation of bid-rigging as a predicate act is conclusory and insufficient for purposes of RICO.

To determine whether the RICO claim is sufficient, it is therefore necessary to review the elements of mail fraud and wire fraud, and the manner in which these predicate acts must be alleged.

To allege mail fraud under 18 U.S.C. §1341, a plaintiff must allege:  1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the mails for the purpose of executing the scheme.  Tal v. Hogan, 453 F.3d at 1263.  The elements of wire fraud are very similar but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud.  *Id*.  The common thread among these crimes is the concept of "fraud."  *Id*.  Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance;  (8) the hearer's right to rely on it; and (9) injury.  *Id*.  Failure to adequately allege any one of the nine elements is fatal to the fraud claim.  *Id*.  A plaintiff alleging mail fraud or wire fraud as predicate acts for a RICO claim must set forth the time, place and content of the false representation, as well as the identity of the party making the false statement and the consequences thereof.  *Id*.  In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity; malice, intent, knowledge, and other conditions of mind of a person may be averred generally.  *Id*. at n.20, quoting Rule 9(b).

The complaint's only specific allegations regarding use of the mails or wires are:  that a day after having spoken with Mr. Stuteville by telephone, Mr. Wright advised Mr. Poindexter that The Underwriters Group would issue the bond (¶ 40); that on April 6, 2011, plaintiffs mailed funds to The Underwriters Group by overnight mail

(¶ 40); and that there were calls from Mr. Stuteville to Mr. Poindexter regarding the possibility of selling some of Pridex's equipment and Mr. Poindexter's confirmation that if the equipment were sold then Pridex would purchase updated equipment to complete the job.  (¶ 37.)[6]

The gravamen of mail fraud or wire fraud is the fraud, and any use of the mails incident to effecting the fraud satisfies the mailing element.  Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 640 (2008).  Nevertheless, it is noted that there are no allegations that any mail services or wire services were used to communicate a representation which was known to be false.  Nor is there any allegation that Mr. Stuteville knew at the time  he allegedly steered plaintiffs to The Underwriters Group that The Underwriters Group was not licensed to provide a bond in Oklahoma.  In fact, there are no allegations that any defendant who was in a position to steer plaintiffs to The Underwriters Group did so despite personal knowledge that The Underwriters Group could not provide a proper bond.

The court concludes that the complaint fails to allege a pattern of racketeering activity.

### G.  Rulings Regarding the RICO Claim

The complaint fails to identify which subsection of §1962 plaintiffs' RICO claim is based upon.  This renders the RICO claim insufficient under Rule 12(b)(6).  Presuming that plaintiffs could amend their RICO claim to clarify that it is brought

---

[6]Plaintiffs' response brief attaches an affidavit (doc. no. 38, ex. 1) which the court does not consider for the purpose of determining the sufficiency of the RICO claim as alleged.  The affidavit has been considered only for the limited purpose of determining whether amendment of the complaint to include the matters described in the affidavit would change any results.  The affidavit states that the bond which was delivered to Mr. Poindexter from The Underwriters Group was delivered by use of a commercial carrier between Florida and Oklahoma.  If included in the allegations, this fact would not change any results stated in this order.

under § 1962(c) as their briefing indicates, the court has conducted a context-specific evaluation of the RICO claim alleged under that subsection.  Having done so, the court concludes that the RICO allegations fail to state a claim under § 1962(c).  Nor does the complaint state a claim under any other subsection of § 1962(c).  *See*, n.2., *supra.*

The RICO claim alleged in count one of the Amended Complaint fails on its merits and is **DISMISSED** with prejudice under Rule 12(b)(6), Fed. R. Civ. P.

Defendants' motions at doc. no. 24 (motion to dismiss of Richard Reynolds, city manager) and doc. no. 32 (motion to dismiss of Jack Stuteville, mayor) are **GRANTED** to the extent that these motions ask the court to dismiss the RICO claim under Rule 12(b)(6).

The two defendants which plaintiffs argue have been served but have not filed a timely answer or motion, The Underwriters Group, Inc., and Larry G. Wright, are dismissed from the RICO claim *sua sponte* because the complaint fails to state a claim under RICO.[7]

V.  Supplemental Jurisdiction

The only federal claim has now been dismissed and there is no diversity jurisdiction.  Accordingly, the court must determine whether to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. §1367(c)(3).

Judicial economy, fairness, convenience, and comity are all considerations which guide a district court's decision regarding whether to defer to a state court or retain and dispose of state law claims.  United Mine Workers v. Gibbs, 383 U.S. 715,

---

[7]The court notes references in plaintiffs' briefing to the indictment and arrest of Mr. Wright for insurance fraud in Florida.  Even if incorporated in the allegations, these matters would not render the RICO claim sufficient with respect to Mr. Wright or The Underwriters Group, or with respect to any other defendants.

726-27 (1966).  The Tenth Circuit has held that when federal claims are resolved before trial, the district court should usually decline to exercise jurisdiction over the remaining state law claims and allow the plaintiff to pursue them in state court.  *See*, Smith v. City of Enid By and Through Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).  Having disposed of the sole federal claim prior to trial, and finding no consideration which causes the court to conclude that it should retain jurisdiction over the state law claims, the court, in the exercise of its discretion, declines to exercise supplemental jurisdiction over those claims.

The state law claims alleged in counts II through VIII of the Amended Complaint are **DISMISSED** without prejudice for lack of supplemental jurisdiction.  To the extent that the City of Kingfisher's motion (doc. no. 26),  and Mr. Reynolds' and Mr. Stuteville's motions (doc. nos. 24 and 32) ask the court, alternatively, to dismiss the state law claims for lack of supplemental jurisdiction, these motions are **GRANTED**.

VI.  Action Dismissed and
Rulings Reiterated

No claims remain in this court for adjudication and this action is **DISMISSED**.

To reiterate, the RICO claim is **DISMISSED** with prejudice under Rule 12(b)(6), Fed. R. Civ. P., because the RICO claim fails on its merits.  The defendants named in the RICO claim are dismissed from that particular claim with prejudice.

All state law claims are **DISMISSED** without prejudice because the court declines to exercise supplemental jurisdiction over the state law claims.

The motions to dismiss filed by the city defendants, Mr. Reynolds, Mr. Stuteville, and the City of Kingfisher, are each **GRANTED IN PART** as set out in the

text and as reiterated here.  Mr. Reynold's motion (doc. no. 24) is **GRANTED** to the extent that he asks the court to dismiss the RICO claim under Rule 12(b)(6), and to the extent that he alternatively asks the court to decline supplemental jurisdiction over the state law claims.  Mr. Stuteville's motion (doc. no. 32) is **GRANTED** to the extent that he asks the court to dismiss the RICO claim under Rule 12(b)(6), and to the extent that he alternatively asks the court to decline supplemental jurisdiction over the state law claims.  The City of Kingfisher's motion (doc. no. 26) is **GRANTED** only with respect to the City's alternative request that if the court dismisses the RICO claim and does not dismiss the state law claims based upon Rule 12(b)(6) grounds, that the court decline supplemental jurisdiction over the state law claims.

The motions involving TMC and Mr. Mecklenburg (doc. nos. 29 and 40) are **STRICKEN** as moot because these defendants have been voluntarily dismissed by the plaintiffs.

## VII.  <u>Leave To Amend</u>

Plaintiffs have not moved for leave to amend.  The few matters which plaintiffs' briefing suggests might be added to the allegations would not change the results stated in this order.  Nevertheless, in an abundance of caution, the court provides a limited opportunity to seek leave to amend with respect to the RICO claim only, within the following parameters.

One important purpose of the motions to dismiss stage of litigation is to narrow the parties' claims to those claims which have some actual possibility of success.  If, consistent with this purpose, and if, consistent with the requirements of Rule 11, Fed. R. Civ. P., plaintiffs (and their counsel, as officers of the court) believe they can amend their RICO claim so as to meet *each* of the numerous insufficiencies identified in this order, then plaintiffs may seek leave to amend for that limited purpose only.

Any such motion must be filed within fourteen days of the date of this order and must attach a copy of the proposed Second Amended Complaint as an exhibit. To assist in the court's and the defendants' evaluation of the RICO claim, a Second Amended Complaint must leave the existing allegations and their paragraph numbers unchanged and must delineate in some manner (for example, by underlining or with italics) new factual allegations which plaintiffs contend render the RICO claim sufficient. A motion which does not comply may be stricken without further comment.

In the event that a Second Amended Complaint is allowed and ultimately found sufficient with respect to the RICO claim, the portion of this order which dismisses the state law claims for lack of supplemental jurisdiction will, at that point, be vacated and the court will go on to address the sufficiency of the state law claims under Rule 12(b)(6).

Dated this 10th day of May, 2012.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


12-0031p006.wpd

-10-